PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

v.

RONALD MARK CHAPMAN,

    *Defendant-Appellant.*

No. 10-5071

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(3:10-cr-00034-1)

Argued: October 26, 2011

Decided: January 4, 2012

Before NIEMEYER and DIAZ, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Hamilton wrote
the opinion, in which Judge Niemeyer and Judge Diaz joined.

## COUNSEL

**ARGUED:** Richard W. Weston, WESTON LAW OFFICE,
Huntington, West Virginia, for Appellant. Stephan Edward
Oestreicher, Jr., UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee. **ON BRIEF:** R. Booth

Goodwin II, United States Attorney, Charleston, West Virginia, Lisa G. Johnston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia; Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Deputy Assistant Attorney General, Kevin R. Gingras, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

**OPINION**

HAMILTON, Senior Circuit Judge:

Section 922(g)(8) of Title 18 of the United States Code prohibits a person who is subject to a domestic violence protective order issued under certain specified circumstances from, *inter alia*, possessing a firearm or ammunition in or affecting interstate commerce. 18 U.S.C. § 922(g)(8). The sole issue raised on appeal by Ronald Chapman (Chapman) is whether his conviction on one count of violating § 922(g)(8) survives his as-applied constitutional challenge under the Second Amendment, U.S. Const. amend. II. For reasons that follow, we affirm the judgment of the district court.

I

On December 28, 2009, police officers from the Milton, West Virginia Police Department responded to a 911 dispatch involving shots being fired at the residence of Chapman's ex-wife, where he had been living for approximately two months. Minutes before the 911 dispatch, Chapman's ex-wife had found him in the master bedroom with a .45 caliber handgun. Chapman informed her that he planned to kill himself. As Chapman's ex-wife attempted to wrestle the handgun away from him, two shots were fired into the bedroom wall. Chapman then retrieved a shotgun from the closet, which Chapman's ex-wife also wrestled away from him. Chapman then

picked up a .38 caliber revolver. At this point, Chapman's ex-wife fled to a neighbor's residence across the street where she made the 911 call. After Chapman's ex-wife had fled her residence, Chapman fired a shot out of the master bedroom window in her direction.

Upon arriving at the scene, the officers surrounded the ex-wife's residence. After approximately ten minutes, the officers convinced Chapman to exit the residence. Upon exiting, Chapman was placed under arrest on state charges of wanton endangerment. These charges were later dismissed. The officers then entered the residence to ensure that no one else was inside. Upon entry, the officers saw three firearms in plain view. Chapman's ex-wife then entered the residence and aided the officers in finding three more firearms and 991 rounds of ammunition.

Chapman was subsequently indicted on one count of knowingly possessing six firearms and 991 cartridges of ammunition while simultaneously being subject to a domestic violence protective order (DVPO), in violation of § 922(g)(8) and 18 U.S.C. § 924(a)(2). With respect to the particulars of Chapman's DVPO, the indictment alleged that it: (1) was issued after a hearing of which Chapman received actual notice, and at which he had an opportunity to participate; (2) restrained Chapman from abusing, harassing, stalking, or threatening his intimate partner, or engaging in other conduct that would place his intimate partner in reasonable fear of bodily injury; (3) included a finding that Chapman represents a credible threat to the physical safety of his intimate partner; and (4) by its terms, explicitly prohibited the use, attempted use, or threatened use of physical force against his intimate partner that would reasonably be expected to cause bodily injury.

The intimate partner Chapman's DVPO sought to protect was not Chapman's ex-wife; rather, the DVPO sought to protect a woman with whom Chapman had been in a romantic

relationship for the immediately preceding approximately three-and-one-half years. The DVPO reflects a judicial finding that Chapman likely committed domestic abuse. The DVPO was effective from November 3, 2009 until May 3, 2010, and expressly informed Chapman that he "shall not possess any firearms (even those for which [he] has a license to posses) or ammunition while this protective order is in effect as this may violate federal law." (J.A. 378).

Of relevance in the present appeal, Chapman subsequently moved to dismiss the indictment on the ground that § 922(g)(8), as applied to him, violated his right to bear arms in his home for self-defense under the Second Amendment to the United States Constitution. The government opposed Chapman's motion to dismiss. Both sides filed memorandums in support of their respective positions, with the government offering quotations and citations to scholarly social science evidence in its filings. Chapman filed a response to the government's memorandum in which he did not challenge the validity of the government's social science evidence.

The district court held a hearing on Chapman's motion to dismiss. The district court subsequently rejected Chapman's as-applied Second Amendment challenge and denied his motion to dismiss his indictment. *United States v. Chapman*, 2010 WL 2403791 (S.D. W.Va. June 14, 2010).

Chapman subsequently entered a conditional plea of guilty to violation of §§ 922(g)(8) and 924(a)(2), as alleged in the single-count indictment, pursuant to a plea agreement that reserved his right to appeal the district court's denial of his motion to dismiss his indictment with respect to his as-applied Second Amendment challenge. *See* Fed. R. Crim. P. 11(a)(2).

The district court sentenced Chapman to time served (approximately six months) and two years of supervised release. Chapman noted this timely appeal.

II

We review *de novo* the district court's rejection of Chapman's as-applied Second Amendment challenge to § 922(g)(8). *See United States v. Malloy*, 568 F.3d 166, 171 (4th Cir. 2009) ("This court reviews a challenge to the constitutionality of a federal statute *de novo*."), *cert. denied*, 130 S. Ct. 1736 (2010).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. As the Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the right of the people to keep and bear arms, as provided in the Second Amendment, is an individual right without regard to militia service, *id.* at 595; the core right being "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id.* at 635.

We analyze Chapman's as-applied Second Amendment challenge to § 922(g)(8) under a two-part approach. *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010). *See also United States v. Staten*, No. 10-5318, 2011 WL 6016976, at *3 (4th Cir. Dec. 5, 2011) (applying *Chester*'s two-part approach). The first part asks whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee as historically understood. *Chester*, 628 F.3d at 680. If the answer to this question is no, that is the end of the matter. *Id.* If the answer is yes, then we move on to consider the second part of the two-part approach, which involves application of the appropriate form of means-end scrutiny. *Id.*

Chapman takes the position that § 922(g)(8) imposes a burden on conduct falling within the scope of the Second Amendment's guarantee as historically understood. The government takes the opposite position. We need not and do not

resolve this issue because, assuming *arguendo* that Chapman's Second Amendment rights are intact and that he is entitled to some measure of Second Amendment protection to keep and possess firearms and ammunition in his home for self-defense, our following analysis leads us to conclude that intermediate scrutiny applies and § 922(g)(8)(A)-(B) and (C)(ii), as-applied to Chapman, survives intermediate scrutiny.[1] *Cf. Staten*, No. 10-5318, 2011 WL 6016976, at *5 (addressing as-applied challenge to 18 U.S.C. § 922(g)(9) and not resolving whether § 922(g)(9) imposes a burden on conduct falling within scope of the Second Amendment's guarantee as historically understood, because, assuming *arguendo* that it does, government carried its burden of defending statute under intermediate scrutiny).

Having arrived at the second part of the two-part approach, Chapman contends that strict scrutiny is the appropriate form of means-end scrutiny to test the constitutionality of § 922(g)(8). This is so, he argues, because his claim is within the core right identified in *Heller*—the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense.

Relying upon our decision in *Chester*, 628 F.3d at 673, the government urges us to hold that intermediate scrutiny is the appropriate standard of scrutiny for Chapman and similarly situated persons, which is also the level of scrutiny applied by the district court below.[2] In *Chester*, we held that intermediate scrutiny was the appropriate standard to analyze the defendant's challenge to § 922(g)(9), which statute prohibits a person who has been convicted of a misdemeanor crime of

---

[1]We will explain later in this opinion why Chapman's Second Amendment challenge must be limited to § 922(g)(8)(A)-(B) and (C)(ii). *See infra* pp. 9-11.

[2]Rational-basis review, which is the most lenient level of means-end scrutiny, is inapplicable to review a law that burdens conduct protected under the Second Amendment. *Chester*, 628 F.3d at 682.

domestic violence from possessing, shipping, or receiving a firearm or ammunition in or affecting interstate commerce. In so holding, we reasoned that, by virtue of his criminal history as a domestic violence misdemeanant, Chester's claim of the right to possess a firearm in his home for the purpose self-defense "[w]as not within the core right identified in *Heller*—the right of a *law-abiding*, *responsible* citizen to possess and carry a weapon for self-defense . . . ." *Id.* at 682-83.

When faced with the choice between strict scrutiny and intermediate scrutiny in the second part of the two-part approach to analyzing a Second Amendment challenge to the same statute that is at issue in the present appeal, *i.e.*, § 922(g)(8), the Tenth Circuit chose intermediate scrutiny. It did so on the basis that § 922(g)(8), like § 922(g)(9), applies only to a "narrow class[ ] of persons who, based on their past behavior, are more likely to engage in domestic violence." *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010). Although not having the benefit of the Tenth Circuit's decision in *Reese*, the district court in the present case held that intermediate scrutiny applied based upon similar reasoning.

We agree with the reasoning of the Tenth Circuit in *Reese* and the district court. *Reese*, 627 F.3d at 801–02. Chapman's claim is not within the core right identified in *Heller*—the right of a law-abiding, *responsible* citizen to possess and carry a weapon for self-defense. Assuming *arguendo* that Chapman was a law-abiding citizen at the time he possessed the six firearms and 991 cartridges of ammunition set forth in the indictment, he was, without a doubt, not a responsible citizen by virtue of: (1) a judicial finding that he likely committed domestic abuse; (2) his engaging in behavior causing him to be judicially prohibited for 180 days from using, attempting to use, or threatening to use physical force against his intimate partner that would reasonably be expected to cause bodily injury; (3) his serious attempts at suicide using firearms in the very home in which he claims to have possessed such firearms for self-defense and his endangering the life of his ex-

wife in the process; and (4) his discharge of a firearm out of the bedroom window in the direction of his ex-wife. Accordingly, we conclude that intermediate scrutiny is the appropriate standard of scrutiny for Chapman and similarly situated persons.

Under intermediate scrutiny, the government bears the burden of establishing a reasonable fit between the challenged statute and a substantial governmental objective.[3] *Chester*, 628 F.3d at 683. *See also Staten*, 2011 WL 6016976, at *5. Section 922(g)(8) was enacted in September 1994. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110401(c), 108 Stat. 1796, 2014-2015, 2151 (1994). The government identifies reducing domestic gun violence as the substantial governmental objective of § 922(g)(8). Section 922(g)(8)'s legislative history is fully consistent with this position. *See* Tom Lininger, *A Better Way to Disarm Batterers*, 54 Hastings L.J. 525, 538-44 (2003) (concluding legislative history of § 922(g)(8) indicates passage was in response to Congress' concern about the great dangers posed by firearms in the hands of domestic abusers and "that, under present law, the possibility of disarming batterers depended too much on the discretion of individual judges and prosecutors; a uniformly enforced gun ban was necessary to protect battered women and children"). Also, common sense and case law fully support the government's position, which position Chapman does not dispute. *See Reese*, 627 F.3d at 802 (holding that § 922(g)(8)'s objective, as asserted by the government, of "keep[ing] firearms out of

---

[3]We note that although our decision in *Chester*, 628 F.3d at 683, had not yet issued at the time the district court denied Chapman's motion to dismiss his indictment based upon his as-applied Second Amendment challenge to § 922(g)(8), the district court applied the materially same formulation of intermediate scrutiny as we subsequently adopted in *Chester*. *Chapman*, 2010 WL 2403791, at *8. After evaluating the government's evidence and Chapman's responsive evidence, the district court found that § 922(g)(8) "is at least sufficiently tailored, in proportion to the government's compelling interest to pass intermediate scrutiny." *Id.*

the hands of people who have been judicially determined to pose a credible threat to the physical safety of a family member, or who have been ordered not to use, attempt to use, or threaten to use physical force against an intimate partner or child that would reasonably be expected to cause bodily injury," is an important one (internal quotation marks omitted)). *Cf. Schenck v. Pro-Choice Network*, 519 U.S. 357, 376 (1997) (referring to the "significant governmental interest in public safety"); *United States v. Salerno*, 481 U.S. 739, 750 (1987) (observing "Government's general interest in preventing crime is compelling"); *Staten*, 2011 WL 6016976, at *5 (holding that, based upon legislative history of § 922(g)(9), common sense, and case law, government had carried its burden of establishing that reducing domestic gun violence is a substantial governmental objective). Based upon § 922(g)(8)'s legislative history, the relevant case law, and common sense, we hold the government has carried its burden of establishing that reducing domestic gun violence is a substantial governmental objective of § 922(g)(8).

This brings us to the reasonable fit inquiry. As we did when recently considering the as-applied Second Amendment challenge to § 922(g)(9) in *Staten*, 2011 WL 6016976, at *6, we begin our reasonable fit inquiry here by considering the precise contours of § 922(g)(8). Pursuant to § 922(g)(8),

> [i]t shall be unlawful for any person— . . . who is subject to a court order that—
>
>> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>>
>> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other con-

> duct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; *or*
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . .
>
> * * *
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8) (emphasis added). For purposes of § 922(g)(8)(B), "[t]he term 'intimate partner' means, with respect to a person, the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person." 18 U.S.C. § 921(a)(32).

At this point, we must address the issue presented by § 922(g)(8)(C)'s disjunctive construction. Because Chapman's Second Amendment challenge is an as-applied one, we must determine to which statutory subsection Chapman pleaded guilty—§ 922(g)(8)(C)(i) or § 922(g)(8)(C)(ii). As is required, Chapman's indictment alleged conjunctively the disjunctive components of § 922(g)(8)(C). *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (*en banc*) (*per curiam* for *en banc* majority) ("[I]t is settled that a charging document

must allege conjunctively the disjunctive components of an underlying statute."). However, when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct. *Id.* at 775. We conclude the least serious of the disjunctive statutory conduct set forth in § 922(g)(8)(C) is found in § 922(g)(8)(C)(ii). This is because § 922(g)(8)(C)(ii) establishes only indirectly the point that § 922(g)(8)(C)(i) establishes directly; the point that a judicial officer has explicitly determined the defendant represents a credible threat to the physical safety of his intimate partner, his child, or the child of his intimate partner. In contrast, § 922(g)(8)(C)(ii) establishes the same point by reasonable inference from the fact that a defendant is subject to a DVPO that, "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . ." As the Fifth Circuit concluded in *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), "Congress in enacting section 922(g)(8)(C)(ii) proceeded on the assumption that the laws of the several states were such that court orders, issued after notice and hearing, should not embrace the prohibitions of paragraph (C)(ii) unless such either were not contested or evidence credited by the court reflected a real threat or danger of injury to the protected party by the party enjoined." *Id.* at 262. Because § 922(g)(8)(C)(ii) is the least serious of the statutory conduct set forth in § 922(g)(8)(C), in the present appeal, we must decide whether § 922(g)(8)(A)-(B), and (C)(ii), as applied to Chapman, survives intermediate scrutiny.

At this point, we must determine whether the government has carried its burden of establishing a reasonable fit between § 922(g)(8)(A)-(B) and (C)(ii) and the substantial governmental objective of reducing domestic gun violence, keeping in mind that the fit needs to be reasonable, but not perfect. *Staten*, 2011 WL 6016976, at *6. This means that the government is not required to prove that § 922(g)(8)(A)-(B) and

(C)(ii) is the least intrusive means of reducing domestic gun violence or that there be no burden whatsoever on Chapman's assumed *arguendo* right under the Second Amendment to keep and bear arms in his home for self-defense. *Id.*

Of critical importance to our reasonable fit analysis is the fact that numerous features of § 922(g)(8)(A)-(B) and (C)(ii) keep its prohibitory sweep exceedingly narrow. The first limits its prohibitory sweep to persons under a DVPO then currently in force. *See id.* § 922(g)(8) ("[i]t shall be unlawful for any person— . . . who *is* subject to a court order that—. . .") (emphasis added). Chapman's DVPO had a 180-day duration. The second narrowing feature is found in § 922(g)(8)(A), which requires the subject DVPO to have issued after a hearing satisfying the fundamental requirements of procedural due process. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("[A]t a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). There is no dispute that Chapman's DVPO issued after a hearing of which Chapman received actual notice, and at which he had an opportunity to participate.

The third narrowing feature is found in § 922(g)(8)(B), which limits the reach of § 922(g)(8) not only to the domestic context (including containing the statutorily defined term "intimate partner"), but also limits its reach to a class of persons who have been restrained "from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child . . . ." *Id.* § 922(g)(8)(B). Per Chapman's guilty plea to the charge contained in the indictment, Chapman admitted that his DVPO restrained him from harassing, stalking, or threatening his intimate partner, or engaging in other conduct that would place his intimate partner in reasonable fear of bodily injury. *See United States v. Gosselin*

*World Wide Moving, N.V.*, 411 F.3d 502, 515 (4th Cir. 2005) (voluntary and intelligent plea of guilty is admission of all elements of a formal criminal charge).

The fourth and final narrowing feature of § 922(g)(8)(A)-(B), and (C)(ii) is § 922(g)(8)(C)(ii), which requires that the subject DVPO "by its terms explicitly prohibit[ ] the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . ." *Id.* § 922(g)(8)(C)(ii). Here, by his guilty plea, Chapman admitted this element. *Vann*, 660 F.3d at 774; *Gosselin World Wide Moving, N.V.*, 411 F.3d at 515.

Mindful of § 922(g)(8)(A)-(B) and (C)(ii)'s exceedingly narrow prohibitory sweep, we move on to evaluate the evidence offered by the government in support of its reasonable fit burden. In order to carry this burden, as it did in *Staten*, "the government primarily relies upon empirical evidence garnered from social science studies, the results of which and conclusions drawn therefrom appear in scholarly social science reports (also commonly referred to as articles)." 2011 WL 6016976, at *7. Not surprisingly, the government's reasonable fit proffer here faithfully tracks the one it made with respect to § 922(g)(9) in *Staten*.

Because we have already set forth such evidence in detail in *Staten* and found the government justified in relying upon it to establish certain facts, 2011 WL 6016976, at **7-11, we need not repeat that information here. Relying upon the social science evidence as set forth and detailed in *Staten*, *id.*, we held "the government has established that: (1) domestic violence is a serious problem in the United States; (2) the rate of recidivism among domestic violence misdemeanants is substantial; (3) the use of firearms in connection with domestic violence is all too common; (4) the use of firearms in connection with domestic violence increases the risk of injury or homicide during a domestic violence incident; and (5) the use

of firearms in connection with domestic violence often leads to injury or homicide." *Id.* at *11.

Although Chapman had an opportunity below to contest the validity of the government's social science evidence, he did not do so. Instead, he relied below and continues to rely on appeal upon three of the same reports relied upon by the government in support of his position that § 922(g)(8) has not been shown to reduce the rate of domestic violence. For example, he relied upon one of these reports for the proposition that, in 2000, a total of 7.4 million assaults on intimate partners occurred in the United States. *See* U.S. Dept. of Justice, National Institute of Justice, Patricia Tjaden and Nancy Thoennes, *Extent, Nature, and Consequences of Intimate Partner Violence: Findings From the National Violence Against Women Survey*, NCJ 181867 (July 2000), available at https://www.ncjrs.gov/pdffiles1/nij/181867.pdf. He relied upon a second of these reports for the proposition that, in the year 2000, 1,687 homicides occurred at the hands of intimate partners in the United States. *See* U.S. Dept. of Justice, National Institute of Justice, Bureau of Justice Statistics Crime Data Brief, Callie Rennison, Intimate Partner Violence, 1993-2001, NCJ 197838 (February 2003), available at http://www.ncjrs.gov/App/Publications/abstract.aspx?ID=197 838.

According to Chapman, taken together, these two reports suggest the likelihood that 99.98% of domestic violence assailants in a given year do not commit murder. Unfortunately for Chapman, this point, which focuses only upon homicides, does nothing to undercut the conclusion supported by the government's social science evidence "that the use of firearms in connection with domestic violence is all too common, increases the risk of injury or homicide during domestic violence, and often leads to injury or homicide." *Staten*, 2011 WL 6016976, at *10. Remembering that § 922(g)(8) was enacted in September 1994, we also note that one of the reports relied upon by Chapman for the proposition that

§ 922(g)(8) has not been shown to reduce the rate of domestic violence, actually supports the opposite proposition by explaining that the number of violent crimes by intimate partners against males and females declined 42% and 49% respectively between 1993 and 2001. Rennison, *supra*, at 1.

Chapman having cast no doubt on the government's proffered social science evidence and after reviewing it ourselves, we again hold "the government has established that: (1) domestic violence is a serious problem in the United States; (2) the rate of recidivism among domestic violence misdemeanants is substantial; (3) the use of firearms in connection with domestic violence is all too common; (4) the use of firearms in connection with domestic violence increases the risk of injury or homicide during a domestic violence incident; and (5) the use of firearms in connection with domestic violence often leads to injury or homicide." *Staten*, 2011 WL 6016976, at *11. Given these established facts, along with logic and common sense, we are constrained to hold that the government has carried its burden of establishing a reasonable fit between the substantial governmental objective of reducing domestic gun violence and keeping firearms out of the hands of persons who are currently subject to a court order which: (1) issued after a hearing satisfying the fundamental requirements of procedural due process; (2) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and (3) by its terms, explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. *See Reese*, 627 F.3d at 803-04 (applying intermediate scrutiny and rejecting Second Amendment challenge to defendant's conviction under § 922(g)(8)(A)-(B), and (C)(ii)).

In so holding, we consider significant the fact that Congress substantially tailored the reach of § 922(g)(8)(A)-(B) and

(C)(ii) by limiting its application to the exact duration of the DVPO at issue, which in Chapman's case was only 180 days. This construct is more than reasonable when one compares the often life long firearm prohibition of § 922(g)(9) on domestic violence misdemeanants with the temporally definite firearm prohibition of § 922(g)(8)(A)-(B) and (C)(ii). Obviously, Congress reached the undeniably reasonable conclusion that the domestic violence danger presented by a person who satisfies the elements of § 922(g)(8)(A)-(B) and (C)(ii) as compared to a person who has been adjudicated guilty of a domestic violence misdemeanor warrants far less burden on his Second Amendment right to keep and bear arms in defense of hearth and home. In other words, Congress tailored § 922(g)(8)(A)-(B) and (C)(ii)'s firearm prohibition to cover only the time period during which it deemed the persons subject to it to be dangerous.

We also recognize that the prohibitory net cast by § 922(g)(8)(A)-(B) and (C)(ii) may be somewhat over-inclusive given that not every person who falls within in it would misuse a firearm against his own child, an intimate partner, or a child of such intimate partner, if permitted to possess one. This point does not undermine the constitutionality of § 922(g)(8)(A)-(B) and (C)(ii), however, because it merely suggests that the fit is not a perfect one; a reasonable fit is all that is required under intermediate scrutiny. *Staten*, 2011 WL 6016976, at *11.

For the reasons stated, we hold that § 922(g)(8)(A)-(B) and (C)(ii), as applied to Chapman, satisfies the intermediate scrutiny standard in analyzing his Second Amendment challenge to such statute. We, therefore, affirm the judgment of the district court.

*AFFIRMED*