

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00231-CV

_____

COLBY SKYLER GUY RIDEOUT, Appellant

V.

HALLIE FRAZIER RIDEOUT, Appellee

On Appeal from the County Court at Law
Hood County, Texas
Trial Court No. CL2024146

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Colby Skyler Guy Rideout challenges a protective order entered against him for the protection of Appellee Hallie Frazier Rideout under Chapter 7B of the Texas Code of Criminal Procedure. Raising two issues, Colby[1] argues (1) that the evidence is legally and factually insufficient to support the trial court's decision to issue the protective order and (2) that the statutes underpinning the protective order are unconstitutional, both facially and as applied to him. We affirm.

## I. BACKGROUND

Hallie and Colby were previously married and have a son together; they divorced in October 2020.

In June 2021, Hallie moved from Cleburne to Granbury to "start over" with her son. Shortly thereafter, Colby began attending Hallie's church even though she had told him that she "didn't want him to come [into] that space." Hallie asked him to at least go to a different service, but Colby refused and continued to sit "caddy-corner" from her in church and to repeatedly look back at her while she was trying to worship. He also started attending a "Sunday school class that shared a wall with [hers]."

---

[1]Because the parties share the same surname, we refer to them by their first names to avoid confusion. *See, e.g.*, *Est. of Meyers*, No. 02-25-00189-CV, 2025 WL 3723746, at *1 n.1 (Tex. App.—Fort Worth Dec. 23, 2025, no pet.) (mem. op.).

In August 2023, Hallie and Colby's son began playing soccer. Colby drove from Cleburne to Granbury to watch not only each game but also each 30-minute practice session and always made it a point to sit right next to Hallie. Each time that she got up to move because she felt uncomfortable, he picked up his chair to follow her.

One night after the soccer team's pictures were taken, Hallie took their son to Sonic. According to Hallie, as she was trying to exit the parking lot, Colby blocked her vehicle with his truck and angrily confronted her about failing to tell him about the team pictures.

In October 2023, Hallie filed a motion to enforce Colby's child-support obligations because he had failed to make his required payments. In December 2023, Hallie and Colby entered into a Rule 11 agreement that resolved the child-support-enforcement motion and required them to communicate exclusively through AppClose.[2] The day after the Rule 11 agreement was signed, Colby sent Hallie a message informing her that he was moving to the neighborhood "right behind" hers in Granbury. After moving to Granbury, Colby joined Hallie's gym, showed up at a restaurant while she was eating, and shopped at the same grocery stores.

---

[2]AppClose is a co-parenting communication app that "securely and automatically" time-stamps, encrypts, and stores every message. *See* AppClose, https://www.appclose.com (last visited Apr. 30, 2026).

After Hallie and Colby began communicating on AppClose, Colby sent Hallie numerous messages criticizing her parenting skills, telling her that she was a horrible mother, and attacking her family. Hallie testified that Colby's constant messaging "ma[de her] feel really scared" and that the torrent of messages was unrelenting. Hallie stated that she had asked Colby to stop messaging her so much but that he had not heeded her request.

In January 2024, Hallie visited a different church in Granbury because Colby had made her uncomfortable at her current one. Right after the service, she received a message from Colby stating that her Jeep was really easy to spot from the highway at the new church and that if she decided to start taking their son to a different church, Colby would "follow [him] wherever he went."[3] This frightened Hallie because she had not told anyone that she would be visiting the new church.

In March 2024, in lieu of probation for failing to pay child support, Colby agreed to a list of permanent injunctions, including one forbidding him from coming within 30 feet of Hallie without written consent. In May 2024, Colby stood within 30 feet of Hallie at one of their son's baseball practices and repeatedly tried to talk to her. Colby stayed well after the practice ended, continued to hang around their son, and insisted that he walk Hallie and their son to her vehicle. When Hallie asked Colby to say goodbye to their son at the baseball field and reminded him that he was not

_____

[3]Colby had possession of their son at the time. Hallie had visited the new church by herself.

4

supposed to be within 30 feet of her, Colby refused to say goodbye and asserted that Hallie had consented to his being within 30 feet of her by coming up to talk to him. He then became agitated and "started getting in [Hallie's] face and raising his voice." Hallie feared that Colby "was going to get physical." One of her male friends eventually walked Colby to his truck to deescalate the situation.

Hallie testified that Colby had been arrested in September 2024 for harassing her. *See* Tex. Penal Code § 42.07(a). Around the time of Colby's arrest, Hallie filed an application for a protective order. The trial court signed a temporary ex parte order and set the application for hearing. Following the hearing, the trial court found that there were reasonable grounds to believe that Colby had committed the offense of stalking against Hallie and signed a final protective order preventing him from, among other things, going within 200 feet of Hallie, her residence, or her place of employment for two years. After a series of motions and countermotions, the trial court signed an amended final protective order removing or striking language restricting Colby's ability to own or possess a firearm. Colby then appealed from the amended order.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In his first issue, Colby contends that the evidence is legally and factually insufficient to support the trial court's protective order. We disagree.

5

### 1. Standard of Review

When, as here, the trial court acts as factfinder, we review its findings under the familiar legal- and factual-sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *see also Watts v. Adviento*, No. 02-17-00424-CV, 2019 WL 1388534, at *3 n.3 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op.).

### a. Legal Sufficiency

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *Huskins v. Garcia*, No. 02-21-00328-CV, 2022 WL 3905083, at *2 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.) (mem. op.). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

### b. Factual Sufficiency

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If reversing for factual insufficiency, we must detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient—that is, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool*, 715 S.W.2d at 635.

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). Acting as factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). An appellate court must not substitute its judgment for that of the factfinder. *Id.*

## 2. Analysis

Hallie's application for protective order was brought under Chapter 7B of the Texas Code of Criminal Procedure. When an application is filed under that chapter, the trial court must find whether there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, indecent assault, stalking, or trafficking. *See* Tex. Code Crim. Proc. art. 7B.003(a). If the court finds that there are reasonable grounds to believe that the applicant has been the victim of stalking, "the court shall issue a protective order that includes a statement of the required findings." *Id.* art. 7B.003(b); *see id.* arts. 7B.001(a)(1), .052.

As relevant here, a person commits the offense of stalking "if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person, knowingly engages in conduct that" (1) constitutes harassment under Penal Code Section 42.07; (2) causes the other person "to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended"; and (3) would cause a reasonable person "to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended" under the circumstances. Tex. Penal Code § 42.072(a)(1), (2)(B), (3)(D); *see Garza v. Renteria*, 726 S.W.3d 894, 899 (Tex. App.—Houston [14th Dist.] 2025, no pet.). Under Penal Code Section 42.07, the following conduct constitutes harassment if done "with intent to harass, annoy, alarm, abuse, torment, or embarrass another": (1) "send[ing] repeated electronic communications in a manner reasonably likely to harass, annoy,

8

alarm, abuse, torment, embarrass, or offend another" or (2) "track[ing] or monitor[ing] the personal property or motor vehicle of another person, without the other person's effective consent." Tex. Penal Code § 42.07(a)(7), (9).

As detailed above, Hallie presented evidence that Colby, among other things, (1) had been arrested for harassing her, (2) had sent her repeated electronic communications attacking her parenting skills and the members of her family, (3) had refused to stop messaging her after she asked him to stop, and (4) had tracked or monitored the location of her vehicle. Thus, Hallie presented credible evidence that Colby had harassed her. *See id.* She also testified that Colby's harassing conduct had alarmed and frightened her. *See id.* § 42.072(a)(2)(B). And as the trial court pointed out, Colby's incessant messaging combined with his other behavior—such as trying to sit next to Hallie at their son's baseball practices even after she told him that it makes her uncomfortable and his refusal to attend a different church (or even a different service)—would cause a reasonable person to feel harassed, intimidated, and annoyed. *See id.* § 42.072(a)(3)(D).

Thus, considering the entire record and applying the applicable standard of review, we conclude that the credible evidence supporting the trial court's finding that there were reasonable grounds to believe that Hallie had been the victim of stalking was not so weak that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635. Accordingly, the evidence supporting the trial court's protective order is factually sufficient—and, by extension, legally

9

sufficient.[4] *See id.*; *see also S.B. v. Tex. Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246, 252 (Tex. App.—Austin 2022, pets. denied) ("Evidence that is factually sufficient to support a trial court's finding necessarily satisfies the legal-sufficiency standard.").

We overrule Colby's first issue.

## B. Constitutional Complaint

In his second issue, Colby contends that the statutes underpinning the protective order are unconstitutional on their face and as applied to him. Specifically, he asserts that (1) because Chapter 7B of the Texas Code of Criminal Procedure—which incorporates Penal Code Section 47.072—authorizes the issuance of a protective order even in the absence of a showing that the defendant "represents a credible threat to the safety" of the applicant and (2) because Penal Code Section 46.04(c) makes it a criminal offense for a person who is subject to a Chapter 7B

---

[4]Colby argues that the evidence is legally and factually insufficient to support the trial court's protective order because (1) Hallie "admitted her allegations of family violence were 'not true' and asked the trial court to remove any family[-]violence finding" from the protective order and (2) because the trial court's decision to amend the protective order to remove language restricting Colby's right to possess a firearm "show[s] that there was no 'concern' about [his] firearm possession and therefore no physical threat." But this argument ignores the language of Article 7B.003(b), which, as noted, requires a trial court to issue a protective order if it finds that there are reasonable grounds to believe that the applicant was the victim of stalking. Tex. Code Crim. Proc. art. 7B.003(b). No family-violence or ongoing-physical-threat finding is necessary. *See id.*; *see also id.* art. 7B.052 (providing that a trial court "shall issue a protective order . . . if, *in lieu of a finding that family violence occurred . . .* , the court finds that . . . probable cause exists to believe" that a stalking offense was committed and "the nature of the scheme or course of conduct engaged in by the defendant in committing the [stalking] offense indicates the defendant is likely in the future" to engage in conduct prohibited by the stalking statute (emphasis added)).

protective order to possess a firearm, the statutory scheme violates his Second Amendment right to keep and bear arms. *See* Tex. Code Crim. Proc. arts. 7B.003, .052(b); Tex. Penal Code §§ 46.04(c), 47.072; *see also* U.S. Const. amend. II. We disagree.

### 1. Standard of Review

When evaluating the constitutionality of a statute, we presume that it complies with both the United States and Texas Constitutions. *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020). The party challenging a statute's constitutionality bears a "high burden" to show that it is unconstitutional. *Id.* (quoting *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015)).

There are two types of challenges to a statute's constitutionality: facial challenges and as-applied challenges. *Lund v. Giauque*, 416 S.W.3d 122, 127 (Tex. App.—Fort Worth 2013, no pet.); *see Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 & n.16 (Tex. 1995). A facial challenge asserts that a statute, by its terms, always operates unconstitutionally. *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014); *In re Commitment of Fisher*, 164 S.W.3d 637, 655 (Tex. 2005) (to prevail on a claim that a statute is unconstitutional on its face, a party "bears the heavy burden" of showing that the statute "is unconstitutional in every possible application"). An as-applied challenge asserts that a statute, while generally constitutional, operates unconstitutionally as to the claimant because of his particular circumstances. *Tenet Hosps.*, 445 S.W.3d at 702; *Lund*, 416 S.W.3d at 127.

11

We review a constitutional challenge de novo as a question of law. *Philipp v. Methodist Hosps. of Dall.*, No. 05-21-00350-CV, 2022 WL 2448118, at *1 (Tex. App.—Dallas July 6, 2022, no pet.) (mem. op.) (citing *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011)); *Tex. Alcoholic Beverage Comm'n v. Live Oak Brewing Co.*, 537 S.W.3d 647, 654 (Tex. App.—Austin 2017, pet. denied). Nevertheless, "the determination [of a statute's constitutionality] will in most instances require [us] to consider the entire record, including evidence offered by the parties." *Patel*, 469 S.W.3d at 87.

**2. Analysis**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Thus, it confers "an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595, 128 S. Ct. 2783, 2799 (2008); *United States v. Chapman*, 666 F.3d 220, 224 (4th Cir. 2012). But this right is not unlimited. *Heller*, 554 U.S. at 595, 626, 128 S. Ct. 2799, 2816.

We have previously rejected a Second Amendment challenge to the firearm restrictions in a Chapter 7B (formerly Chapter 7A)[5] protective order. *See Wargocz v. Brewer*, No. 02-17-00178-CV, 2018 WL 4924755, at *6–9 (Tex. App.—Fort Worth

---

[5]Prior to January 1, 2021, the statutes currently codified in Chapter 7B were in Chapter 7A, which was repealed and reenacted in Chapter 7B in a nonsubstantive revision. *See* Act of May 21, 2019, 86th Leg., R.S., ch. 469, art. 1, § 1.02, art. 3, § 3.01, 2019 Tex. Gen. Laws 1065, 1066, 1151; *see also Caldwell v. State ex rel. Zimmerman*, No. 03-22-00464-CV, 2024 WL 3906789, at *1 n.1 (Tex. App.—Austin Aug. 23, 2024, pet. denied) (mem. op.).

Oct. 11, 2018, no pet.) (mem. op.).[6] And we have also rejected a facial Second Amendment challenge to Penal Code Section 46.04. *See Ex parte Huell*, 704 S.W.3d 246, 248–50 (Tex. App.—Fort Worth 2024, no pet.).[7] As those opinions make clear, the core right protected by the Second Amendment is the right of responsible, law-abiding citizens to carry a firearm outside the home, and someone—like Colby—found to have committed a stalking offense cannot be considered a law-abiding, responsible citizen. *See Huell*, 704 S.W.3d at 249; *Wargocz*, 2018 WL 4924755, at *7. Accordingly, to withstand Colby's Second Amendment attack, the challenged statutes must merely satisfy intermediate—not strict—scrutiny. *See Wargocz*, 2018 WL 4924755, at *7. Thus, to the extent that they reasonably fit a substantial statutory objective, they pass constitutional muster. *See id.* at *8 (citing *Chapman*, 666 F.3d at 228).

In *Wargocz*, we recognized that Chapter 7B reasonably fit the substantial statutory objective of protecting stalking victims and allowing them to seek protection

---

[6]The appellant in *Wargocz* raised only an as-applied challenge. *See* 2018 WL 4924755, at *6. But our rejection of the appellant's as-applied challenge necessarily implies that any facial challenge to Chapter 7B's constitutionality would likewise fail. *See City of South Padre Island v. Surfvive*, No. 13-20-00536-CV, 2022 WL 2069216, at *8 n.3 (Tex. App.—Corpus Christi–Edinburg June 9, 2022), *review denied*, 678 S.W.3d 727 (Tex. 2023) (mem. op.).

[7]Although the appellant in *Huell* had been convicted of possessing a firearm under Penal Code Section 46.04(a), *see* 704 S.W.3d at 247, we framed the appellant's complaint as a challenge to Section 46.04 as a whole, and our reasoning is equally applicable to Section 46.04(c), *see id.* at 248–50.

from their stalkers. *See id.* at *8–9. And by prohibiting stalkers subject to protective orders from possessing firearms, Penal Code Section 46.04 works in conjunction with Chapter 7B to achieve this statutory objective. Because the challenged statutes reasonably fit a substantial statutory objective, they are not facially unconstitutional.[8] *See id.* at *8 (citing *Chapman*, 666 F.3d at 225). And because we have already determined that the evidence is sufficient to support the trial court's finding that there were reasonable grounds to believe that Colby had stalked Hallie, his as-applied challenge also fails. *See Netaji v. Roberts*, No. 03-19-00840-CV, 2021 WL 5312489, at *11 (Tex. App.—Austin Nov. 12, 2021) (mem. op.) ("Our analysis of whether the stalking and harassment statutes are unconstitutional as applied to [appellant] . . . dovetails with a legal sufficiency analysis concerning whether there was

---

[8]Citing the Supreme Court's recent opinion in *United States v. Rahimi*, Colby argues that the challenged statutes are unconstitutional because they allow for the restriction of a stalker's right to keep and bear arms even in the absence of a finding that he "'represents a credible threat to the safety' of another." *See* 602 U.S. 680, 699, 144 S. Ct. 1889, 1901–02 (2024). But in *Rahimi*, the Supreme Court actually upheld a federal law temporarily disarming persons subject to restraining orders. *See id.* at 697–98, 144 S. Ct. at 1901. Because the federal statute at issue in *Rahimi* bars a person subject to a protective order from possessing a firearm only if the order contains an explicit finding "that such person represents a credible threat to the physical safety" of a protected person, the Supreme Court's analysis focused on whether an individual found by a court to pose such a threat could be temporarily disarmed consistent with the Second Amendment. *See id.* at 685–86, 702, 144 S. Ct. at 1894, 1903. But by holding that a person explicitly found to pose such a threat can be temporarily disarmed, the Supreme Court did not—as Colby suggests—hold that such a finding was a prerequisite to disarmament under the Second Amendment. *See id.* at 702, 144 S. Ct. at 1903 (recognizing the limited nature of the court's holding).

any evidence that his conduct constituted stalking to support issuance of the protective order." (internal quotations omitted)).

We overrule Colby's second issue.

### III. CONCLUSION

Having overruled both of Colby's issues, we affirm the trial court's protective order.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  May 14, 2026