# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3677

_____

United States of America

*Plaintiff - Appellee*

v.

Dale Edward White

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: June 8, 2017
Filed: July 13, 2017
[Unpublished]

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Dale Edward White challenges the 47-month sentence imposed by the district court[1] after he pleaded guilty to being a prohibited person in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). We affirm.

On January 2, 2016, White and his father, K.W., were discussing a problem White was having with the sights on one of his .22 caliber rifles while the two were driving to their Nashua, Iowa, residence. K.W. owned the residence and lived there with White and White's fiancee. When the two arrived at their residence, White retrieved the problem rifle, a Magtech .22LR, and brought it to K.W., who was seated in a chair in the living room. The rifle did not contain a magazine, but White did not check to see if it was loaded. The rifle slipped from White's hand and accidentally discharged as he handed it to K.W. The bullet struck K.W. in the head, causing his death.

Officers executed a search warrant at the residence later that day as part of their investigation into K.W.'s death. They recovered from the living room the Magtech rifle and spent shell casing, as well as an additional four rifles and two revolvers. Officers recovered from White's upstairs bedroom an extended-capacity, 25-round .22 caliber magazine, a second .22 caliber magazine, and .22 caliber ammunition. They recovered another .22 caliber magazine from a gun cabinet located at the top of the stairs to the second floor. A second search warrant was executed at the residence on January 5, 2016, resulting in the recovery of an additional 42 firearms from various locations throughout the house. Officers seized three rifles and three shotguns from the top of the stairs to the second floor; one rifle and five shotguns from the living room; one shotgun from the kitchen; four rifles and seven shotguns from a downstairs bedroom; four handguns, six rifles, and two shotguns from K.W.'s bedroom; and two handguns, two rifles, and two shotguns from White's bedroom.

---

[1]The Honorable Linda R. Reade, then Chief Judge, United States District Court for the Northern District of Iowa.

All told, officers recovered 49 firearms from the residence, eight handguns, 21 rifles, and 20 shotguns, none of which was secured in a safe, lock box, or gun cabinet. After officers found marijuana and methamphetamine paraphernalia in White's bedroom, he admitted to "being a user" of both drugs, having last "smoked" on the morning of January 5, 2016. White submitted a urine sample on January 6, 2016, which tested positive for the presence of amphetamine and methamphetamine.

White's presentence report (PSR) calculated a base offense level of 20 under § 2K2.1(a)(4)(B) of the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) because the offense involved a semiautomatic firearm that was capable of accepting a large-capacity magazine. It also recommended a 6-level enhancement under Guidelines § 2K2.1(b)(1)(C) because the offense involved between 25 and 99 firearms. After a 3-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 23, which, coupled with a criminal history category of I, resulted in an advisory sentencing range of 46 to 57 months' imprisonment.

White objected to the 6-level enhancement under § 2K2.1(b)(1)(C), arguing that only two of the firearms recovered from the residence "belonged" to him and that he did not have dominion over the residence owned by his father. In the alternative, he argued that he should be assessed a 2-level enhancement under § 2K2.1(b)(1)(A) because he was responsible for only seven firearms: the Magtech rifle and the six firearms recovered from his bedroom. The district court overruled White's objection and found that he was responsible for at least 25 firearms. The court reasoned that it was "immaterial who owned the firearms," but nevertheless took a "more conservative approach," concluding that White actually or constructively possessed the 26 "firearms found in his bedroom and in the common area" of the residence. After considering the 18 U.S.C. § 3553(a) factors, the court imposed the sentence set forth above.

White first argues that the district court improperly calculated his base offense level under § 2K2.1(a)(4)(B). Because White did not raise this claim of procedural error before the district court, we review only for plain error. United States v. Vaughn, 519 F.3d 802, 804 (8th Cir. 2008). To obtain relief under plain-error review, a defendant must show that there was an error, that the error was "clear or obvious under current law," and that the error affected his substantial rights. United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011). Even if a defendant makes this showing, we will exercise our discretion to correct a plain error "only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Vaughn, 519 F.3d at 804 (citation omitted).

Section 2K2.1(a)(4)(B) applies if the defendant was a "prohibited person" at the time of the offense and the "offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine," which is defined in relevant part to mean:

> a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

U.S.S.G. § 2K2.1 cmt. n.2. The parties agree that, as a self-admitted drug user, White was a "prohibited person" within the meaning of 18 U.S.C. § 922(g)(3); that he possessed a large-capacity magazine for the Magtech rifle; and that there was no magazine attached to the Magtech rifle at the time of the incident. White argues, however, that the large-capacity magazine was not in "close proximity" to the Magtech rifle as required under § 2K2.1(a)(4)(B), because the rifle was recovered from the living room, while the large-capacity magazine was recovered from his upstairs bedroom.

White cannot carry his burden to show that the district court committed an error that was "clear or obvious" under the law at the time of the court's ruling. See Poitra, 648 F.3d at 887. White cites no controlling authority from the Supreme Court or this court that directly addresses the meaning of the phrase "close proximity," as it is used in § 2K2.1(a)(4)(B).[2] In the absence of any controlling or persuasive authority on the issue, it is at the very least "subject to reasonable dispute." See Puckett v. United States, 556 U.S. 129, 135 (2009). Accordingly, any alleged error committed by the district court in determining that the large-capacity magazine and the Magtech rifle were in close proximity for purposes of § 2K2.1(a)(4)(B) was neither clear nor obvious under the law at the time of the court's ruling, and was therefore not plain. See id.; see also United States v. Olano, 507 U.S. 725, 734 (1993) (noting that "plain" is synonymous with "clear" or "obvious" and that, "[a]t a minimum, court[s] of appeals cannot correct an error [under plain-error review] unless the error is clear under current law"); United States v. Watson, 843 F.3d 335, 336, 337 (8th Cir. 2016) (finding no plain error when "neither the Supreme Court nor this court" had resolved the issue presented and the issue was not "settled beyond debate"), *cert. denied*, 137 S. Ct. 1358 (2017); United States v. Pazour, 609 F.3d 950, 954 (8th Cir. 2010) (per curiam) (finding no plain error when "our review of the [Guidelines] and relevant precedent did not uncover any authority clearly and obviously supporting" the defendant's claim on appeal); United States v. Sickinger, 179 F.3d 1091, 1093 (8th Cir. 1999) (finding no plain error when the defendant could not show that any district court error was "clear and obvious"). We conclude that the district court's calculation

---

[2]White cites United States v. Muldock, 483 F. App'x 823, 828-29 (4th Cir. 2012), in support of his argument that the large-capacity magazine and the rifle were not in close proximity for purposes of § 2K2.1(a)(4)(B). Apart from the fact that it is not controlling authority in this circuit, Muldock did not directly rule on the issue. Instead, the court noted the "undisputed testimony" that the magazine and firearm were "six to ten feet" apart and concluded, "[W]e cannot say that the district court erred in finding that . . . the magazine was in close proximity to the firearm." 483 F. App'x at 829.

of White's base offense level under § 2K2.1(a)(4)(B) was not plain error. We leave resolution of the "close proximity" issue for a case in which it is properly raised and preserved.

White also argues that the district court erred in applying the 6-level enhancement under § 2K2.1(b)(1)(C) based on the number of firearms involved in the offense. He concedes that he possessed the Magtech rifle and the 6 firearms recovered from his bedroom, but he renews his contention that he did not possess the 19 additional firearms recovered from the common areas of the residence. The court's determination of the number of firearms involved in the offense for purposes of § 2K2.1(b)(1)(C) is a factual finding that we review for clear error. See United States v. Vega, 720 F.3d 1002, 1003 (8th Cir. 2013).

"A defendant's possession of firearms may be actual or constructive, sole or joint." Id. at 1003. Constructive possession "requires both knowledge that the contraband is present and dominion over the premises where the contraband is located." United States v. Ways, 832 F.3d 887, 897 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 1125 (2017). White concedes that he had knowledge of the firearms recovered from the common areas of the residence. He argues, however, that he did not have dominion over the residence and thus was not in constructive possession of those firearms. It is true that a defendant's "mere presence" in or "mere connection" to a residence where contraband is located is not sufficient to establish that he constructively possessed that contraband. Id. at 897-98. But White was not merely present at or connected to the residence from which the firearms were recovered; it was his primary residence and had been so for many years, and in which he had unrestricted access to the common areas. See United States v. Davis, 449 F.3d 842, 846 (8th Cir. 2006) (noting that constructive possession may not rest on "mere proximity" but can "be established by a showing that the firearm was seized at the defendant's residence"). White thus had both knowledge of the firearms and dominion over the residence sufficient to establish his constructive possession of the

-6-

firearms recovered from the common areas. Also unavailing is White's argument that his father's and brother's ownership of the firearms recovered from the common areas of the residence negated the government's claim that he constructively possessed those firearms, for constructive possession may be "sole or joint." Vega, 720 F.3d at 1003. The district court thus did not clearly err in finding that White had constructive possession of the 19 firearms recovered from the common areas of the residence.

      The judgment is affirmed.

_____