

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---------------------------------------------

No. 02-17-00178-CV

---------------------------------------------

YITZHAK WARGOCZ, Appellant

v.

NICOL YONNE BREWER, Appellee

---

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-617423-17

---

Before Walker, Meier, and Gabriel, JJ.
Memorandum Opinion by Justice Gabriel

**MEMORANDUM OPINION**

Appellant Yitzhak Wargocz appeals the trial court's protective order. In four issues, he argues that the evidence is legally and factually insufficient to support the order, that the order violates the state and federal constitutions, and that the trial court erred by awarding costs and attorney's fees to appellee Nicol Yonne Brewer. We affirm.

## I.  BACKGROUND

Brewer and Wargocz divorced on March 10, 2017. About six weeks later, on April 20, Brewer filed an application for protective order pursuant to chapter 7A of the code of criminal procedure, alleging that Wargocz had been stalking her. *See* Tex. Code Crim. Proc. Ann. art. 7A.01(a)(1) (West Supp. 2018); Tex. Penal Code Ann. § 42.072(a) (West 2016). That same day, the trial court signed a temporary ex parte protective order that, among other things, prohibited Wargocz from communicating with Brewer in any manner. *See* Tex. Code Crim. Proc. Ann. art. 7A.02 (West 2015). Following a hearing on May 9, the trial court found there were reasonable grounds to believe that Brewer was the victim of stalking, granted her application, and signed a protective order prohibiting Wargocz, for a period of five years, from communicating in any manner with Brewer, from going to or within 200 yards of her residence or place of employment, from engaging in conduct that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Brewer, and from possessing a firearm. Wargocz appeals.

## II.  SUFFICIENT EVIDENCE SUPPORTS THE TRIAL COURT'S ORDER

In his first issue, Wargocz argues the trial court's protective order was not supported by legally and factually sufficient evidence.  Specifically, he argues that the evidence is legally and factually insufficient to support the trial court's implied finding that he acted with the necessary mental state for an offense under the stalking statute.

### A.  STANDARD OF REVIEW[1]

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.  *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.  *Cent. Ready Mix Concrete Co. v. Islas*,

---

[1]We recently noted, in an appeal from a protective order issued under family code sections 81.001 and 85.001, that "[t]here is disagreement among our sister intermediate appellate courts as to the proper standard of review to be applied in appeals from protective orders."  *McAfee v. Yancey*, No. 02-14-00192, 2015 WL 1020856, at *3 n.9 (Tex. App.—Fort Worth Mar. 5, 2015, no pet.) (mem. op.).  We observed that some courts review such orders for an abuse of discretion, while others, including this one, apply legal and factual sufficiency standards of review.  *See id.*

228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

### B. APPLICABLE LAW

Chapter 7A of the code of criminal procedure authorizes a person to seek a protective order if, among other things, the person is the victim of stalking. *See* Tex. Code Crim. Proc. Ann. art. 7A.01(a)(1); Tex. Penal Code Ann. § 42.072. If after a hearing the trial court finds there are reasonable grounds to believe that an applicant is the victim of stalking, it "shall issue a protective order that includes a statement of the required findings." Tex. Code Crim. Proc. Ann. art. 7A.03(a)–(b) (West 2015). Consistent with article 7A.03, the protective order at issue here recites that the trial court found reasonable grounds to believe Brewer was the victim of stalking.

As relevant to this case, a person commits the offense of stalking

if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

4

(1) constitutes an offense under [penal code] section 42.07 . . . ;

(2) causes the other person . . . to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to:

. . . .

  (D)    feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code Ann. § 42.072(a).  In turn, a person commits an offense under penal code section 42.07—the statute setting out the offense of harassment—if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

. . . .; or

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

*Id.* § 42.07(a) (West Supp. 2018).

Wargocz argues that neither legally nor factually sufficient evidence supports a finding that he knowingly engaged in conduct proscribed by the stalking statute.  A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.  *Id.* § 6.03(b) (West 2011).  A person acts

5

knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* Proof of a culpable mental state invariably depends on circumstantial evidence and may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *McGowan v. State*, 375 S.W.3d 585, 591 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

## C. EVIDENCE

Under the March 10, 2017 divorce decree, Brewer was required to pay alimony to Wargocz every month through December 2017. And she was required to maintain an email address at which Wargocz could contact her to facilitate communication with him concerning the monthly alimony payments. Brewer used a personal email address for that purpose. In addition to her personal email address, Brewer worked at PBM Laboratories and had a company email address.

At the May 9 hearing, Brewer testified that in the twenty days from April 1 through April 20, Wargocz sent approximately 900 emails to her work email address. Those emails were admitted into evidence. Brewer further stated that Wargocz had sent emails to her personal email address over the approximately two-month period preceding the May 9 hearing. More than 100 emails Wargocz sent to Brewer's personal email address between April 21 and May 2 were also admitted into evidence.

6

Among those emails is one from Wargocz on April 21 acknowledging he had received the trial court's April 20 ex parte temporary protective order.

Some of the emails Wargocz sent to Brewer concerned details of the monthly alimony she had to pay him under the divorce decree, and Brewer even responded to some of those emails. But the vast majority of Wargocz's emails to Brewer asked her to stop ignoring him and to allow him to talk to her on the phone. He also sent numerous emails to Brewer accusing her of stealing and blaming her for the demise of their marriage.

As early as April 2, Wargocz sent emails to Brewer telling her to stop blocking his number from her cell phone so he could text her. As early as April 8, Wargocz sent emails admonishing Brewer to stop ignoring him. And as early as April 9, Wargocz sent emails asking Brewer to unblock her office phone. On April 11, Brewer replied to one of the emails Wargocz sent to her work email address, telling him to stop calling her workplace, to stop showing up at her workplace, and to "leave [her] alone.....please!!!!!!!" Wargocz replied to that email. Brewer further testified that she had asked Wargocz to stop emailing her, but he did not oblige her request and continued to email her with the same frequency.

Brewer also testified that Wargocz repeatedly called her, that he constantly called people she knew, and that he repeatedly called a colleague's office phone asking to speak with Brewer. She stated that the nature of those phone calls was to the effect that if she did not call him back, there would be consequences. Indeed, the

evidence shows that on April 18, Wargocz had called one of Brewer's colleague's office phone and left a voice message asking the colleague to

> please tell [Brewer] to, uh, not ignore my email and to call me . . . unless she, she's going to ignore me, I'm going to have to, I'm going to have to take the next step. I'm going to have to. She, she's going to force me to take the next step. I don't want to do that. But if she's going to ignore me and, and think that this is nothing, then, uh, I'm going to have to take the next step, and she's going to regret that.

Brewer testified that when she heard this message, she became scared because she did not know what Wargocz meant by taking "the next step." She also said that Wargocz had been hospitalized for mental health reasons in the past year because he had made suicidal threats and had also threatened that he would kill her and blow up her car, a threat she took seriously.

That Wargocz repeatedly called for Brewer at her office phone was corroborated by Wendy Scoggins, PBM's business records custodian. Scoggins testified that Wargocz called PBM so often that he was disrupting PBM's business, and she stated that she had told him to stop calling the company. But despite being told to stop calling the company, Wargocz continued. In addition, Scoggins stated that Brewer had complained to her about Wargocz "almost every day for about a three-month period." Scoggins also testified that she had communicated twice with law enforcement concerning Wargocz. The first time, Wargocz had come to the company's premises, and the company contacted law enforcement to see if the company could have a harassment report filed or have criminal charges pressed. PBM

8

called law enforcement a second time after Scoggins heard the voice message Wargocz had left on Brewer's colleague's work phone, a message Scoggins considered to be threatening.

Scoggins testified that Brewer was terminated from her job at PBM on April 20. Brewer testified that her understanding was that she had been terminated because she was considered a liability with regard to the safety of other PBM employees due to Wargocz's harassing conduct toward her and other PBM employees. And although Scoggins denied Brewer's termination had been based in any way on Wargocz's communications with PBM, she also stated that PBM had taken specific security measures as a result of threats from Wargocz.

When asked whether it was true he sent hundreds of emails to Brewer's work email address over the couple of months preceding the May 9 hearing, Wargocz asserted his Fifth Amendment privilege not to incriminate himself. And Wargocz also asserted his Fifth Amendment privilege in response to the question whether he had emailed Brewer "at least 100 times, maybe in excess of 150 times" after he was served with the trial court's April 20 ex parte temporary protective order.

Brewer testified that without a protective order, she feared that when she got another job, Wargocz would begin calling there and that his harassment would continue. She also testified that she was scared his harassment was not going to end and that she was concerned for her physical safety. Brewer noted that the trial court had earlier entered a temporary ex parte protective order prohibiting Wargocz from

9

communicating with her in any manner. And she confirmed that Wargocz emailed her many times after he was served with that order.

### D. ANALYSIS

As indicated above, there was evidence that Wargocz knew in early April that Brewer had blocked him from contacting her work or cell phones and that she was ignoring his many attempts to communicate with her. There was evidence that he received an email from her on April 11 telling him to stop calling her workplace, to stop showing up at her workplace, and to "leave [her] alone.....please!!!!!!!" And there was evidence that on April 21, he acknowledged he had been served with the trial court's ex parte temporary protective order prohibiting him from communicating with Brewer in any manner. From this evidence, the trial court could have reasonably concluded that Wargocz's own conduct demonstrated that he knew Brewer found his repeated efforts to communicate with her by email and phone to be harassing and annoying and wanted him to stop.

In addition, from the above evidence, the trial court could have reasonably found that Wargocz continued to repeatedly call and email Brewer after he knew that she found that very conduct to be harassing and annoying. And given that finding, the trial court could have inferred not only that Wargocz intended to repeatedly call and email Brewer in a manner she was reasonably likely to find harassing and annoying, *see* Tex. Penal Code Ann. § 42.072(a)(1), but also that he engaged in that course of conduct knowing it would cause Brewer to feel harassed and annoyed, *see*

10

*id.* §§ 42.07(a)(4), (7), 42.072(a)(1). And given the volume and nature of Wargocz's communication to Brewer after he was told to stop—including sending more than 100 emails to her after he knew the trial court had ordered him to cease communicating with her in any manner—the trial court could have reasonably found that Wargocz knowingly engaged in a course of conduct that would cause a reasonable person to feel harassed and annoyed. *See id.* § 42.072(a)(3).

Viewing the record through the appropriate sufficiency standards of review, we conclude that legally and factually sufficient evidence supports the trial court's implied finding that Wargocz acted with the mental state prescribed in the stalking statute when engaging in the course of conduct proscribed by the stalking statute. We therefore overrule his first issue.

### III. WARGOCZ DID NOT PRESERVE HIS FOURTEENTH AMENDMENT CHALLENGE

In his second issue, Wargocz argues that certain provisions of the stalking and harassment statutes are impermissibly vague and thus facially violate both the Due Process Clause in the federal Constitution's Fourteenth Amendment and the state constitution's due course of law clause.

We first note that with regard to his due-process challenge, Wargocz has not argued that the state constitution's due course of law clause affords him greater protections than the Fourteenth Amendment's Due Process Clause, nor did he separately brief the state constitutional grounds. We thus focus our analysis of his

11

due-process challenge pursuant to the Fourteenth Amendment and do not consider whether the stalking and harassment statutes facially violate the state constitution's due course of law clause. *See Dewberry v. State*, 4 S.W.3d 735, 744 (Tex. Crim. App. 1999) (noting that because appellant failed to distinguish his rights under the Texas constitution from that of the federal Constitution and combined his points based on the state and federal constitutions into one argument, "we only address whether appellant's rights under the United States Constitution were violated"); *see also Webb v. Schlagal*, 530 S.W.3d 793, 806 & n.8 (Tex. App.—Eastland 2017, pet. denied) (applying court of criminal appeals caselaw requiring separate briefing of federal and state constitutional arguments to appeal from chapter 7A protective order in which appellant lodged, among other things, a facial challenge to chapter 7A under the Fourteenth Amendment on the grounds that it was vague and overbroad).

Brewer maintains that Wargocz failed to preserve his facial challenge under the Due Process Clause. The claim that a statute is facially unconstitutional may be forfeited if not properly preserved. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). To preserve error, an objection must generally, among other things, be specific, and the complaint on appeal must comport with the complaint made in the trial court. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). And while no "hyper-technical or formalistic use of words or phrases" is required in order for an objection to preserve an error, the objecting party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly

12

enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *See id.* (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)).

On appeal, Wargocz argues that penal code sections 42.07(a)(4), 42.07(a)(7), 42.072(a)(1), 42.072(a)(2), and 42.072(a)(3)(D) are facially unconstitutional because they all contain the phrase "harass, annoy, alarm, abuse, torment, embarrass, or offend," terms that he maintains are impermissibly vague under the Due Process Clause such that a person of ordinary intelligence has no reasonable opportunity to know what those statutes prohibit. Wargocz maintains he preserved this argument by objecting to Brewer's proposed order after the trial court granted her application:

> THE COURT: Do you have a proposed order?
>
> [Prosecutor[2]]: I do, Your Honor. If I can have just a moment to --
>
> [THE COURT]: You may.
>
> [Defense Counsel]: And I would object to this proposed order at this time. It violates the Second Amendment of the United States Constitution. It violates due process under 42.07. It violates his right to procedural due process.
>
> THE COURT: Objection is overruled.
>
> [Defense Counsel]: Thank you.

---

[2]As authorized by code of criminal procedure article 7A.01(a)(5), Brewer was represented by a prosecutor from the Tarrant County District Attorney's office. *See* Tex. Code Crim. Proc. Ann. art. 7A.01(a)(5).

Mindful of the fact that a party need not employ hyper-technical or formalistic words or phrases to preserve a complaint, *see Clark*, 365 S.W.3d at 339, we conclude that Wargocz's objection was insufficiently specific to alert the trial court to the facial challenge he attempts to raise on appeal. With regard to his due-process objection, Wargocz made no reference to the Constitution or the Due Process Clause, nor did he challenge the validity of the harassment or stalking statutes on the ground that their use of the phrase "harass, annoy, alarm, abuse, torment, embarrass, or offend" rendered them impermissibly vague. And nothing else in the record indicates that the trial court understood Wargocz's objection as including the facial attack he has asserted on appeal. *See State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) (noting an objection is sufficiently specific if the record demonstrates the trial court understood the basis of the objecting party's request). Accordingly, because Wargocz never raised his facial challenge in the trial court, he failed to preserve that issue for review. *See* Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). We thus overrule Wargocz's second issue.

14

## IV. CHAPTER 7A, AS APPLIED TO WARGOCZ, DOES NOT VIOLATE THE SECOND AMENDMENT

In his third issue, Wargocz argues that code of criminal procedure chapter 7A as applied to him violates his Second Amendment right to possess a firearm in his home for self-defense purposes.[3]

Article 7A.05(a)(2)(D) generally authorizes a trial court issuing a chapter 7A protective order to prohibit the alleged offender from possessing a firearm. *See* Tex. Code Crim. Proc. Ann. art. 7A.05(a)(2)(D) (West Supp. 2018). Pursuant to that provision, the trial court enjoined Wargocz from possessing a firearm for the five-year duration of the protective order. Wargocz argues that the application of chapter 7A infringes upon his Second Amendment right to keep a firearm in his home for self-defense purposes because (1) the trial court did not find that he knowingly engaged in conduct that he knew or reasonably should have known would cause Brewer to regard as threatening bodily injury or death; (2) there was no finding of family violence in their divorce decree; and (3) there was no evidence that subsequent to their divorce, he physically harmed Brewer or directly threatened her with bodily injury or death.

---

[3]Wargocz also argues that "the repercussions of [chapter 7A] set forth in [penal code] [s]ection 46.04" are unconstitutional as applied to him. The record does not reflect that section 46.04 was ever at issue in this proceeding. But in any event, in the trial court, Wargocz never presented a complaint on the basis of penal code section 46.04 (unlawful possession of a firearm), and thus he may not raise such a complaint on appeal. *See Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) ("'As applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error.").

He suggests that he may not be deprived of the right to possess a firearm in his home for self-defense absent clear and convincing evidence that he "present[ed] a real danger" to Brewer.

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment secures an individual right to keep a handgun in one's home for self-defense and struck down a law that prohibited a person from possessing a handgun in the home. *See* 554 U.S. 570, 595, 625–26, 628–29, 635 (2008); *see also Young v. Hawaii*, 896 F.3d 1044, 1050 (9th Cir. 2018) (noting that *Heller* held that "the Second Amendment guarantees an individual right to keep a handgun in one's home for self-defense" and "reject[ed] a collective view of the right"). In *McDonald v. City of Chicago*, the Supreme Court held that the Second Amendment applies to the states. *See* 561 U.S. 742, 791 (2010).

In *Heller*'s wake, courts analyzing Second Amendment claims have applied a two-step analytical framework. *See Young*, 896 F.3d at 1051. The first step determines "whether the challenged law burdens conduct protected by the Second Amendment." *Id.* (cleaned up). If so, courts proceed to the second step of applying the appropriate level of scrutiny. *Id.*

Neither party has addressed the first step in any detail. As for Wargocz, he simply referenced *Heller*'s holding that the Second Amendment secures an individual

16

right to keep a handgun in the home for self-defense purposes. But *Heller*, of course, also made clear that the Second Amendment is not unlimited. *See* 554 U.S. at 626. And unlike here, *Heller* did not involve a protective order in which the person prohibited from possessing a firearm had been found to have committed stalking, and Wargocz made no attempt to explain the import of *Heller*, including its express acknowledgment that there are limits to the Second Amendment, to those circumstances. As for Brewer, she did not address the first step at all, instead focusing her argument on the second step of analysis. But ultimately, we need not resolve whether Wargocz's Second Amendment right to possess a firearm in his home for self-defense purposes remained intact after he was judicially found to have committed stalking. For even assuming it did, we conclude that intermediate scrutiny applies and that chapter 7A, as applied to Wargocz, survives intermediate scrutiny. *See United States v. Chapman*, 666 F.3d 220, 225 (4th Cir. 2012).

Courts examining Second Amendment claims post-*Heller* have noted that although the Supreme Court has not resolved what standard of scrutiny applies to laws burdening conduct protected under the Second Amendment, it has indicated that rational basis review does not apply to such claims. *See, e.g.*, *Young*, 896 F.3d at 1051 (stating "*Heller* makes clear that evaluating restrictions of Second Amendment rights under rational basis review is inappropriate" (citing *Heller*, 554 U.S. at 628 n.27)); *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) (noting same). Thus, courts choose between intermediate scrutiny and strict scrutiny, and they do so by

17

considering (1) how close the law comes to the core of the Second Amendment right and (2) the severity of the law's burden on the right. *See Young*, 896 F.3d at 1068; *Stimmel v. Sessions*, 879 F.3d 198, 206–07 (6th Cir. 2018); *Chapman*, 666 F.3d at 226.

The core right identified in *Heller* is often described as the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense.[4] *See Young*, 896 F.3d at 1069; *Peterson v. Martinez*, 707 F.3d 1197, 1218–19 (10th Cir. 2013); *Chapman*, 666 F.3d at 226. But Wargocz cannot be regarded as a law-abiding, responsible citizen. For starters, the trial court found he committed the offense of stalking. And add to that the evidence in this case, which showed that, among other things, Wargocz had threatened not only to kill himself but also to kill Brewer by blowing up her car; had left a voice message on a colleague's office phone that Brewer and her colleagues regarded as threatening; had conducted himself in a way that Brewer's employer regarded as threatening, causing it to take specific security measures and report Wargocz's conduct to law enforcement on two separate occasions; and had knowingly violated the trial court's ex parte temporary protective order. That is not how a law-abiding, responsible citizen conducts himself. *Cf. United*

_____

[4]In its recent decision in *Young*, the Ninth Circuit noted disagreement among some courts on the question whether the core of the Second Amendment's right to keep and bear arms extends beyond the home. *See* 896 F.3d at 1069–70. Because Wargocz's complaint is limited to the protective order's effect of barring him from possessing a firearm in his home, we need not and do not express any opinion regarding whether or to what extent the core of the Second Amendment right extends beyond the home.

18

*States v. Mudlock*, 483 Fed. Appx. 823, 827 (4th Cir. 2012) ("[I]n view of [appellant's] statement to the 911 dispatcher stating that he would shoot any law enforcement officer who approached his house, it can hardly be said that [appellant] is law-abiding."). Because the core right identified in *Heller* protects law-abiding, responsible citizens and Wargocz is not such a citizen, we apply intermediate scrutiny to his claim. *See Chapman*, 666 F.3d at 226 (applying intermediate scrutiny to Second Amendment claim of appellant found not to be a responsible citizen); *see also Young*, 896 F.3d at 1068 ("[I]ntermediate scrutiny is appropriate if the challenged law 'does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right.'" (citation omitted)).

Intermediate scrutiny requires a showing that there is a reasonable fit between the challenged statute and a substantial governmental objective. *See Chapman*, 666 F.3d at 226; *see also Webb*, 530 S.W.3d at 809. As our sister court has noted, the text of chapter 7A indicates its purpose is to protect victims of various criminal offenses, including stalking, and to allow those victims to seek protection from the offenders. *See Webb*, 530 S.W.3d at 809 (citing Tex. Code Crim. Proc. Ann. art. 7A.01). And chapter 7A's legislative history is consistent with this conclusion, as *Webb* explains:

> The legislative history of Chapter 7A (2003 Senate Bill 433) includes a bill analysis from the Senate Research Center, which provides in part:
>
>> Currently, Texas law provides that a person who is battered, sexually assaulted, or harassed by a family

19

> member, household member, or by someone the person is dating may seek protection under the Texas Family Code. This remedy is not available to a person who is battered, sexually assaulted, or harassed by a stranger or a friend/acquaintance in a non-dating relationship. As proposed, S.B. 433 creates a Sexual Assault Order of Protection that would be available to individuals alleging sexual assault and would be available to a victim who has no prior relationship with the perpetrator.

Bill Analysis, Tex. S.B. 433, 78th Leg., R.S. (2003). The House Research Organization's bill analysis for Senate Bill 433 outlined the following:

> SB 433 logically would extend the list of those who can apply for a protective order to include sexual assault victims who do not have a familial, household, or dating relationship with the offender. . . . Protective orders have been proven effective, and applicants are less likely to suffer future violence once an order is in place.

*Id.*

*Webb*, 530 S.W.3d at 809–10.[5] Our sister court in *Webb* implicitly concluded that chapter 7A's objective of protecting victims of the enumerated criminal offenses, including stalking, and allowing those victims to seek protection from the offenders is

---

[5]We note that as originally enacted, chapter 7A authorized a trial court to issue a protective order for victims of sexual assault. *See* Act of May 20, 2003, 78th Leg., R.S., ch. 836, § 1, arts. 7A.01, 7A.03, 2003 Tex. Gen. Laws 2622, 2622–23. The legislature has since amended chapter 7A to authorize a trial court to issue a protective order for victims of other offenses. *See* Tex. Code Crim. Proc. Ann. arts. 7A.01(a)(1)–(2), 7A.03. In 2011, the legislature added stalking to the offenses for which a person could seek a protective order. *See* Act of May 19, 2011, 82d Leg., R.S., ch. 238, § 1, art. 7A.03, 2011 Tex. Sess. Law Serv. 820, 820 (West); Act of May 10, 2011, 82d Leg., R.S., ch. 135, §§ 1–4, arts. 7A.01 to 7A.03, 2011 Tex. Sess. Law Serv. 641, 641–42 (West).

a substantial governmental objective, and we agree. *See id.* 530 S.W.3d at 809–10. We thus turn to the reasonable fit inquiry.

We first note two features of chapter 7A that limit the sweep of the trial court's authority to enjoin the possession of a firearm under article 7A.05(a)(2)(D). First, by the terms of the statute, a trial court can prohibit the possession of a firearm under that provision only if it finds reasonable grounds to believe that the offender has committed one of the enumerated sexual assault, sexual abuse, stalking, or trafficking offenses. *See* Tex. Code Crim. Proc. Ann. arts. 7A.01(a) (providing that chapter 7A authorizes the filing of an application for protective order only where there is a victim of certain enumerated sexual assault, sexual abuse, stalking, or trafficking offenses), 7A.03(a) (authorizing trial court to issue protective order only after finding reasonable grounds to believe offender has committed one of the offenses enumerated in article 7A.03), 7A.05(a)(D) (authorizing trial court, "in a protective order issued under" chapter 7A, to enjoin an offender from possessing a firearm); *see also Webb*, 530 S.W.3d at 810 (noting chapter 7A's limited applicability to persons shown to have committed the enumerated offenses); *cf. Chapman*, 666 F.3d at 228 (noting narrow nature of challenged federal statute's prohibition on possession of firearms because it was limited to individuals subject to a domestic violence protective order). Thus, the terms of the statute itself limit the scope of its applicability to cases squarely within chapter 7A's objective.

A second narrowing feature is that chapter 7A affords an alleged offender the fundamental due-process safeguard of requiring a hearing before the trial court may issue a protective order. *See* Tex. Code Crim. Proc. Ann. art. 7A.03; *cf. Chapman*, 666 F.3d at 228 (noting narrow nature of federal statute prohibiting a person subject to a domestic violence protective order from possessing a firearm because such a protective order could be issued only "after a hearing satisfying the fundamental requirements of procedural due process"). There is no dispute that the trial court's protective order was issued only after the trial court conducted a hearing in which Wargocz had the full opportunity to, and did, participate.

Finally, we turn to the evidence in this case. The trial court heard evidence that Wargocz presented a life-threatening danger to himself and to Brewer. There was evidence related to Wargocz's mental health, including that he had been diagnosed with depression, had been medicated for mental health reasons, and had been hospitalized at least once in the prior year for mental health reasons. With regard to the hospitalization, the evidence showed that occurred because Wargocz had made suicidal threats, as well as threats toward Brewer, including a threat that he would kill her and blow up her car. In addition, the evidence showed Wargocz left a voice message for Brewer threatening to "take the next step" if she continued to refuse communicating with him. And it was not just Brewer who considered that particular message threatening. The evidence showed Brewer's employer did as well, leading them to call the police. In addition, Wargocz's behavior caused Brewer's employer to

22

take additional security measures, including hiring an off-duty police officer and requiring that visitors to the premises be buzzed into a locked waiting area. And Brewer testified that Wargocz was capable of causing her bodily injury and that she had concerns that Wargocz may try to take her life.

Bearing in mind that under intermediate scrutiny, the fit between a challenged statute and the statute's objective need not be perfect but only reasonable, we conclude that chapter 7A, as applied to Wargocz, reasonably fits the statute's objective of protecting victims of stalking and allowing them to seek protection from their stalkers. *See Webb*, 530 S.W.3d at 810 (concluding prohibition of firearm possession pursuant to article 7A.05(a)(2)(D) reasonably fit chapter 7A's objective of protecting victims of stalking). Accordingly, we hold that chapter 7A, as applied in this case, does not violate the Second Amendment. We therefore overrule Wargocz's third issue.

## V. WARGOCZ DID NOT PRESERVE HIS CHALLENGE TO THE TRIAL COURT'S AWARD OF FEES AND COSTS

In his fourth issue, Wargocz argues the trial court erred by ordering him to pay court costs and Brewer's attorney's fees. He argues that the trial court could have assessed costs and attorney's fees against him only if it found he committed family violence. Since it did not so find, Wargocz argues the trial court's award of costs and fees was an abuse of discretion.

23

But the record shows Wargocz failed to preserve this complaint. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). Wargocz never raised his objection to the trial court's award of attorney's fees or costs in the trial court. Accordingly, he failed to preserve that complaint.[6] We therefore overrule his fourth issue.

## VI. CONCLUSION

Having overruled all of Wargocz's issues, we affirm the trial court's protective order. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: October 11, 2018

---

[6]Even assuming Wargocz preserved this complaint, he would not prevail. The trial court found that Wargocz committed stalking, and in the context of reviewing a chapter 7A protective order, we have previously held that stalking "constitutes 'family violence' under the family code." *Bailey v. Bobay*, No. 02-15-00247-CV, 2016 WL 7010924, at *2 (Tex. App.—Fort Worth Dec. 1, 2016, no pet.) (mem. op.).

24